1  FELIPA R. RICHLAND,  SBN 112458
2  **RICHLAND & ASSOCIATES**
   2625 TOWNSGATE ROAD, SUITE 330
3  WESTLAKE VILLAGE, CALIFORNIA 91361
   TEL: (805) 267-1178 │ FAX: (805) 267-1101
   *felipa@richlandlaw.net*

4

5  Attorney for Plaintiff FREDERICK McSWEENEY

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  FREDERICK F. McSWEENEY,                  ) CASE NO.
                                             )
12                        Plaintiff,         ) **COMPLAINT FOR DAMAGES**
                                             )
13                                           ) (1)  TILA VIOLATION
                                             )      (*15 USC §§1601, et. seq.*)
14            vs.                            )
                                             ) (2)  VIOLATION OF CONSUMER
15                                           )      LEGAL REMEDIES ACT
                                             )      (*Civil Code §§ 1750, et. seq.*)
16  **YGRENE ENERGY FUND, INC.**; a          )
17  Delaware Corporation;  **YGRENE**        ) (3)  CANCELLATION OF
    **ENERGY FUND CALIFORNIA, LLC**, a       )      CONTRACT
18  California Limited Liability Corporation; )
    **RENEW FINANCIAL GROUP, Inc.**, a       ) (4)  RESCISSION
19  Delaware Corporation; **RENEW**          )
    **FINANCIAL GROUP, LLC**,  a California   ) (5)  FRAUD
20  Limited Liability Corporation; **RENEW** )
    **FINANCIAL I, Inc.**, a Delaware        ) (6)  UNFAIR BUSINESS
21  Corporation; **RENEW FINANCIAL I, LLC**, )      PRACTICES (*Business &*
    a California Limited Liability Corporation; )    *Professions Code §17200*)
22  **RENEW FINANCIAL HOLDINGS, Inc.**, a    )
    Delaware Corporation; **RENEW FINANCIAL** ) (7)  INTENTIONAL
23  **HOLDINGS, LLC** a California Limited    )      MISREPRESENTATION
    Liability Corporation; **COUNTY OF LOS**  )
24  **ANGELES,** a Public Entity; **REYNALDO** ) (8)  ELDER ABUSE
    **ADONAY FRANCO,** an Individual *dba*    )
25  *Franco Construction*; **HADDOW**        ) (9)  CANCELLATION OF TAXES
    **ALBERTO WEATHERBORNE,** an             )
26  Individual *dba Weatherborne Construction,* )
    and **DOES 1 through 20**, Inclusive,    )      **DEMAND FOR JURY TRIAL**
27                                           )
                          Defendants.        )
28  _____ )

1

**COMPLAINT FOR DAMAGES**

Plaintiff FREDERICK McSWEENEY hereby sues YGRENE ENERGY FUND, INC., (hereafter "YGRENE INC."); YGRENE ENERGY FUND CALIFORNIA, LLC (hereafter "YGRENE LLC"); RENEW FINANCIAL GROUP, Inc. (hereafter "RFG, INC."); RENEW FINANCIAL GROUP, LLC (hereafter "RFG, LLC"); RENEW FINANCIAL I, INC.(hereafter "RF 1, INC"); RENEW FINANCIAL I, LLC (hereafter "RF 1, LLC"); RENEW FINANCIAL HOLDINGS, Inc. (hereafter "RFH, INC"); RENEW FINANCIAL HOLDINGS, LLC (hereafter "RFH, LLC"); REYNALDO ADONAY FRANCO *dba Franco Construction*; ALBERTO WEATHERBORNE *dba Weatherborne Construction*, and DOES 1 through 20, for damages and alleges as follows:

**THE PARTIES**

1.      At all times herein mentioned, Plaintiff FREDERICK McSWEENEY, was and continues to be a resident of the City and County of Los Angeles, State of California.

2.      At all times herein mentioned, Defendant YGRENE ENERGY FUND, INC. ("YGRENE INC.") was and continues to be a Delaware Corporation doing business in the City and County of Los Angeles, State of California.

3.      At all times herein mentioned, Defendant YGRENE ENERGY FUND CALIFORNIA, LLC ("YGRENE LLC") was and continues to be a California Limited Liability Corporation, by virtue of its foreign corporate status doing business in the City and County of Los Angeles, State of California.

4.      At all times herein mentioned, Defendant RENEW FINANCIAL GROUP, Inc. ("RFG, INC.") was and continues to be a Delaware Corporation, doing business in the City and County of Los Angeles, State of California.

5.      At all times herein mentioned, Defendant RENEW FINANCIAL GROUP, LLC ("RFG, LLC") was and continues to be a California Limited Liability Corporation, by virtue of its foreign corporate status doing business in the City and County of Los Angeles, State of California.

/ / /

6.    At all times herein mentioned, Defendant RENEW FINANCIAL I, INC.("RF-1, INC") was and continues to be a Delaware Corporation, doing business in the City and County of Los Angeles, State of California.

7.    At all times herein mentioned, Defendant RENEW FINANCIAL I, LLC ("RF-1, LLC") was and continues to be a California Limited Liability Corporation by virtue of its foreign corporate status, doing business in the City and County of Los Angeles, State of California.

8.    At all times herein mentioned, Defendant RENEW FINANCIAL HOLDINGS, INC. ("RFH, INC") is a Delaware Corporation, doing business in the City and County of Los Angeles, State of California.

9.    At all times herein mentioned, Defendant RENEW FINANCIAL HOLDINGS, LLC ("RFH, LLC") was and is a California Limited Liability Corporation by virtue of its foreign corporate status,  doing business in the City and County of Los Angeles, State of California.

10.    At all times herein mentioned, Defendant COUNTY OF LOS ANGELES (the "COUNTY") is a county in the State of California charged with providing services to its residents, including public social services, property assessment, and tax collection.

11.    At all times herein mentioned, REYNALDO ADONAY FRANCO *dba Franco Construction* was a licensed contractor with a principal place of business in San Bernardino County, State of California,  and contracted with plaintiff in the City and County of Los Angeles, with performance of said contract to be performed in the City and County of Los Angeles.

12.    At all times herein mentioned, ALBERTO WEATHERBORNE *dba Weatherborne Construction* was a licensed contractor with a principal place of business in Los Angeles County, State of California,  and at all times herein mentioned was doing business in and contacted with plaintiff in the City and County of Los Angeles, with performance of said contract to be performed in the City and County of Los Angeles.

/ / /

13.     The true names and capacities of Defendants DOES 1 through 20 are unknown to Plaintiff, and Plaintiff will seek leave of court to amend this complaint to allege such names and capacities as soon as they are ascertained. Each of the Defendants herein was the agent, joint venturer, or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, each was acting in the course and scope of said agency, employment or joint venture with advance knowledge of, acquiescence in or subsequent ratification of the acts of each and every other remaining defendant. Each of DOE Defendants 1 through 20 is responsible, legally, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged, either through co-defendants' conduct or through the authorized and/or ratified conduct of its agents, servants or employees or in some other manner.

14.     Defendants YGRENE, INC. and YGRENE, LLC are hereafter referred to collectively as the "YGRENE Defs."

15.     Defendants RFG, INC., RFG, LLC , RF-1, INC.,  RF-1, LLC., RFH, INC. and RFH, LLC are hereafter referred to collectively as the "RENEW Defs.".

16.     Defendant COUNTY is not sued herein for monetary damages.

**JURISDICTION AND VENUE**

17.     Plaintiff brings his complaint under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

18.     This court has subject matter jurisdiction under TILA. 15 U.S.C. § 1640(e).

19.     Venue is proper in this Court pursuant to California Code of Civil Procedure section 393 because the causes of action arose in the Central District and pursuant to Civil Local Rule 3-2(c) because the events or omissions giving rise to the claims herein alleged occurred in Los Angeles County, California. Defendants further provide and market their products and services within this district, thereby establishing sufficient contact to subject each of them to personal jurisdiction.

**NATURE OF THE ACTION**

20.     This action arises out of the fraudulent business practices engaged in by PACE lenders, management, contractors and their agents. Each of them acted in a manner to defraud plaintiff by misrepresenting the financing terms, performing work which was not needed, by performing substandard work, by charging for goods and services not performed or delivered, by intentionally not disclosing material facts concerning the loan terms. PACE contractors by pray on susceptible elderly consumers, by having consumers execute documents which are not read by the consumer. Finance agents for lenders coordinate with contractors and request consumers execute documents which are neither legible nor intelligible. These fraudulently obtained loans become recorded liens on the subject real property. PACE loan payments are added to the consumer's property tax bill, resulting in significant lump sum payments due in one or two payment options. Non-payment results in a loss of property by the county tax assessor.

21.     At no time did lender, contractor or their agents make a determination of plaintiff's ability to repay the loan.

**FACTS**

22.     At all times mentioned herein,  plaintiff FREDERICK MCSWEENEY was 86 years of age and legally blind. He owned and was the legal owner of his residence identified as 2936 S. Harvard Blvd, Los Angeles, CA 90018.

23     On a date unknown, Plaintiff MC SWEENEY was contacted and solicited by persons unknown who at all times mentioned herein was either a principal, agent, servant and/or employee of both defendants FRANCO and WEATHERBORNE.

24     The financial terms as set forth in both home improvement contracts were neither explained to Plaintiff MCSWEENEY nor were they known to him.

25     At no time during the solicitation, negotiation, or completion of the work was Mr. MCSWEENEY informed that his home would be subject to a PACE first priority lien, that his property tax bill would increase each year to nearly $20,000.00, and that he could lose his home to foreclosure for non-payment.

26.     On or after June 23, 2016 YGRENE Defs., RFG Defs., RF-1 Defs. in collaboration with defendants FRANCO and WEATHERBORNE induced plaintiff, based on trickery, misrepresentations and omissions, to execute financial documents for home improvements which were unnecessary, over-priced, and unaffordable.

27.     At all times herein mentioned plaintiff did not know what he was signing, lacked the ability to read what he was signing, and lacked the ability to understand what he was signing.

28.     On a date after June 23, 2016 defendant FRANCO or his agents caused plaintiff to unknowingly and unwittingly write his name and or initials on a document which writing purports to approve home improvements for a cost of **$77,980.00**. (hereafter referred to as the 'FRANCO CONTRACT")

29.     The FRANCO CONTRACT further caused a loan for the improvements to be recorded as a lien against the property and paid through a property tax assessment.

30.     At no time did plaintiff submit a credit application or borrower application which would have established his lack of income and financial inability to repay the loan.

31.     On a date after June 23, 2016 defendant WEATHERBORNE or his agents caused plaintiff to unknowingly and unwittingly write his name and or initials on a document purports to approve home improvements for a cost of  **$80,150.00**. (hereafter referred to as the "WEATHERBORNE CONTRACT")

32.     The WEATHERBORNE CONTRACT further caused a priority lien for the improvements to be recorded against the property and loan payments to be incurred as a yearly property tax assessment.

33.     On or after June 24, 2016 YGRENE Defs acting through its agents and contractor WEATHERBORNE CONSTRUCTION caused plaintiff's name to be affixed to an electronic financial contract for repayment of a home improvement loan, which caused a lien to be placed on his residential property and caused a tax assessment to be imposed on plaintiff for repayment of the loan. This financing scheme is referred to as California Home Finance Authority (CHFA). The agreement is countersigned on June 27, 2016 by

Golden State Finance Authority. On 7/6/16, Plaintiffs signature was also electronically affixed to an Agreement, Certification and Attestation.

34.     On or after August 10, 2016 Renew Financial acting through its agents and contractor FRANCO CONSTRUCTION caused plaintiff's name to be affixed to an electronic financial contract for repayment of a home improvement loan, which caused a lien to be placed on his residential property and caused a tax assessment to be imposed on plaintiff for repayment of the loan. This financing scheme is referred to as California FIRST.

35.     Plaintiff is retired with limited income from social security. At the time of the two referenced contracts, plaintiff MCSWEENEY suffered from senile dementia.

36.     At no time did defendants request nor require a credit application from plaintiff.

37.     At no time did defendants request nor require proof of income from plaintiff.

38.     Both an application or proof of income  would have established his lack of income and financial inability to repay the loan.

39.     The WEATHERBORNE CONTRACT resulted in a yearly $9,419.21 assessment.

40.     The FRANCO CONTRACT resulted in a yearly $9,505.58 assessment.

41.     In 2017 Plaintiff first learned of the financing scheme after he was informed by his daughter that his property tax bill increased nearly 2300% from $830.18 to $19,754.97.

42.     Both the FRANCO CONTRACT and the WEATHERBORNE CONTRACT constitute lending practices that impose unfair and abusive loan terms on a borrower. The PACE lending practices and actions convinced plaintiff to accept unfair terms through deceptive, coercive, exploitative or unscrupulous actions for a loan that plaintiff borrower didn't need, didn't want and above all could not afford.

43.     PACE loans first originated in California in 2008 and range from $5,000 to more than $100,000.  PACE loans are a complex financing program  marketed to residential and commercial owners for energy improvements and retrofits on their homes. PACE loans have a repayment period of five to 25 years and are repaid through annual

1  assessments on the property owner's property tax bill.

2      44.   PACE loans in California are marketed under different names and have

3  different financing/lender programs. The County of Los Angeles has separately approved

4  and authorized PACE lender programs by contract with the County.

5      45.   The FRANCO CONTRACT was financed as part of the *California First*

6  program which is managed and administered by the RENEW Defs on behalf of the County

7  of Los Angeles.

8      46.   The WEATHERBORNE CONTRACT was financed as part of the *California*

9  *Home Finance Authority* (CHFA) program which is funded, managed and administered by

10  the YGRENE Defs.

11      47.   At all times herein mentioned financing for the California First loans

12  originated with the County of Los Angeles.

13      48.   RENEW Defs administer, supervise and manage the *California First* program

14  pursuant to the authority granted them under a contract dated March 2015 entered into

15  between Renew Defs and the County of Los Angeles ( referred to as the "Administrative

16  Contracts")

17      49.   With the approval, encouragement and acquiescence of the defendants and

18  each of them, PACE loans are marketed to consumers with deceptive, misleading and

19  incomplete information, and are presented and explained to consumers by construction and

20  remodeling owners/employees or their agents, who lack expertise in consumer finance

21  issues.

22      50.   RENEW Defs and YGRENE Defs recruit, enroll, train, supervise, manage,

23  maintain and direct pay the approved contractors for the PACE programs. The training

24  specifically was required to include education about the PACE financing program .

25      51.   At all times herein mentioned, the RENEW Defs and YGRENE Defs failed to

26  screen, train and monitor their network of contractors including defendants FRANCO and

27  WEATHERBORNE and encouraged predatory lending and aggressive marketing in complete

28  disregard for the homeowner's ability to both understand or repay the loan.

52.     At all times herein mentioned, the RENEW Defs and YGRENE Defs negligently, intentionally and knowingly directed its approved contractors to solicit homeowners with complete disregard for the homeowner's ability to repay the loan.

53.     Both contractors FRANCO and WEATHERBORNE were approved YGRENE and RENEW program contractors.

### FIRST CLAIM FOR TILA VIOLATION
*15 USC §§1601, et. seq.*
(Against All Defendants)

54.     Plaintiff incorporates herein each of the allegations contained in the above paragraphs as though fully set forth herein.

55.     The deceptive acts and practices described above amounted to no actual credit term disclosure issued in conjunction with this consumer credit transaction and violated the requirements of Truth in Lending and Regulation Z in the following and other respects, including but not limited to:

- By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b).

- By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a).

- By failing to properly identify property subject to a security interest in violation of 15 U.S.C. § 1638(a)(9) and Regulation Z § 226.18(m).

- By failing to include in the finance charge certain charges imposed by defendant payable by plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d).

56.     Defendants violated and continues to violate the Consumer Credit Protection Act, Title 15 United States Code, Section 1601 et seq., and Regulation Z, Title 12 Code of Federal Regulations, Part 226, which was adopted pursuant to such Act, by failing to

1  properly make the disclosures required by the Act and Regulation Z, as herein after more

2  particularly set forth.

3      57.    Plaintiff is specifically in the class of persons the Consumer Credit

4  Protection Act was designed to protect.

5      58.    As a direct, proximate, and foreseeable result of Defendants failure to

6  provide proper notice and required disclosures, Plaintiff is subject to the loss of his

7  residential property and loss of use of property and other damages as a result of

8  Defendants actions and omissions.

9      59.    Plaintiff seeks rescission of the purportedly secured transactions pursuant to

10  15 U.S.C. § 1635.

11                    **SECOND CLAIM FOR VIOLATION OF**
                   **CONSUMERS LEGAL REMEDIES ACT** ("CLRA")
12                      *California Civil Code §1780 (a)*
                         (Against All Defendants)
13

14      60.    Plaintiff incorporates herein each of the allegations contained in the above

15  paragraphs as though fully set forth herein.

16      61.    Pursuant to the Consumers Legal Remedies Act ("CLRA"),  California Civil

17  Code §1780 (a), any consumer who suffers any damage as a result of the use or

18  employment of any method, act, or practice declared unlawful by Section 1770 may bring

19  an action for damages against that person.

20      62.    Pursuant to California Civil Code §1770(a) (23)(A) a home solicitation, as

21  defined in subdivision (h) of Section 1761, of a consumer who is a senior citizen where a

22  loan is made encumbering the primary residence of that consumer for purposes of paying

23  for home improvements and where the transaction is part of a pattern or practice in

24  violation of either subsection (h) or (i) of Section 1639 of Title 15 of the United States

25  Code or paragraphs (1), (2), and (4) of subdivision (a) of Section 226.34 of Title 12 of the

26  Code of Federal Regulations is an unfair or deceptive act or practice which is unlawful.

27      63.    At all times herein mentioned Plaintiff was a senior citizen within the

28  meaning of CC §1780(a) (23)(A) and the transaction and services sold by defendants were

part of a pattern and practice in violation Title 15 and Title 12 of the United State Code and Code of Federal Regulation.

64.     It is unlawful under the CLRA when an unfair or deceptive act or practice is undertaken by any "person" in a "transaction" intended to result, or which actually results, in the sale or lease of goods to any consumer. At all times herein mention the construction and financing contracts intended to sell goods and services which were not needed and were not delivered or provided.  The financing for same was also deceptively made part of the transaction without plaintiff's knowledge or approval.

65.     Pursuant to California Civil Code § 1780 (e), Plaintiff is entitled to and does seek recovery or attorney fees and costs incurred in pursuing this action.

66.     Pursuant to California Civil Code § 1780 (a)(4), Plaintiff is entitled to and seeks recovery of punitive damages because the conduct of Defendants was reprehensible, fraudulent, malicious, oppressive, and done with reckless disregard of Plaintiff's rights.

## THIRD  CLAIM FOR CANCELLATION OF CONTRACTS

### (Against All Defendants)

67.     Plaintiff incorporates herein each of the allegations contained in the above paragraphs as though fully set forth herein.

CANCELLATION BASED UPON LACK OF MUTUAL CONSENT:

68.     At all times herein mentioned, the principals, employees and agents of *Franco Construction* and *Weatherborne Construction*, were also  acting as the agents of RENEW Defs and YGRENE Defs, pursuant to the authority granted to them by the County under the PACE Administration Contract. In their capacity as acting principals or agents, they directed plaintiff to sign or initial home improvement quotes without explanation as to the nature, meaning, or effect of these documents, such that at no point in time did plaintiff understand or know how payment for the improvements was being made.

69.     At no time did plaintiff believe or understand that he was personally liable for repayment of over $150,000.00. He further did not know or understand that he was also financially responsible  for interest charges on the cost of improvements.

70.    At no time did plaintiff believe or understand that his home was to be used as security for repayment of the costs of the improvements. He further did not know or understand that a tax assessment would be levied for repayment of the cost of improvements.

71.    At no time did plaintiff believe or understand that his annual property tax payments would increase for approximately $800.00 to nearly $20,000.00 annually.

72.    At no time did plaintiff know or understand that his home could be sold by the tax assessor to satisfy payment of the loan.

73.    Plaintiff was completely unaware of the existence, contents and terms of the PACE Financing Documents. As plaintiff was unable to read either the contractor quotes or the financing documents, nor were they read to him, the terms were not disclosed and by omission materially misrepresented to him.

74.    Even if plaintiff was capable of understanding the PACE financing terms, he never would have signed them, as he had no ability to repay the loan and would not have agreed to lose his home for non-payment/default.

75.    As a consequence, there was no meeting of the minds between plaintiff and the principals, agents of defendants and therefore no contract was ever formed as it relates to any either the FRANCO CONSTRUCTION or WEATHERBORNE CONSTRUCTION, or any of the related PACE financing documents or Assessment contracts.

76.    Each of the purported home improvements contracts and the attendant PACE financing documents and Assessment contracts are null and void *ab initio* and are not enforceable.

77.    The FRANCO and WEATHERBORNE contracts and related PACE financing documents, have caused and will continue to  cause serious injury if left outstanding. Accordingly, plaintiff seeks to cancel these instruments pursuant to Civil Code § 3412.

78.    At all times herein mentioned, defendants took, secreted, appropriated, obtained and retained the property of plaintiff - an elder, for a wrongful use and purpose, with the intent to defraud him, and in bad faith, knowing that he had the right to retain his

1 ownership interest in his property. and to have her ownership interest returned to her.

2     79.    Defendants' conduct as set forth above, constitutes financial elder abuse as

3 defined by *Welfare and Institutions Code §1561030* entitling him to an award of attorney's

4 fees pursuant to *Welfare and Institutions Code § 15657.5.*

5 CANCELLATION BASED ON LACK OF CAPACITY:

6     80.    At all times herein mentioned Plaintiff was elderly 83 year old who was and

7 continues to  suffer from senile dementia and by all legal standards lacked the mental

8 capacity to contract.

9     81.    Lacking the capacity to contract, the FRANCO CONSTRUCTION,

10 WEATHERBORNE CONSTRUCTION and PACE financing and Assessment contracts are void

11 *ab initio.*

12     82.    Lacking the capacity to contract, any resulting agreement or acquiescence to

13 the recording of liens on his real property are  void *ab initio.*

14     83.    Lacking the capacity to contract, any resulting agreement or acquiescence to

15 the repayment of loans by means of a tax assessment are void *ab initio.*

16 CANCELLATION PURSUANT TO CIVIL CODE  §1689.5- 1689.14:

17     84.    The FRANCO CONSTRUCTION and WEATHERBORNE CONSTRUCTION home

18 improvement quotes constitute "home solicitation contracts" as defined by Civil Code §

19 1689.5, et. seq. and provided "goods" and "services" as defined in Civil Code §1689.5.

20     85.    At all times relevant, the FRANCO CONSTRUCTION and WEATHERBORNE

21 CONSTRUCTION were subject to and governed by the provisions of Civil Code §§ 1689.5

22 through 1689.14.

23     86.    Plaintiff is informed and believes and thereupon alleges that he was never

24 given any notice of cancellation pertaining to each of the FRANCO CONSTRUCTION and

25 WEATHERBORNE CONSTRUCTION contracts nor the financing or Assessment contracts, in

26 violation of Civil Code§1689.7(c).

27     87.    Plaintiff was not informed orally of his right to cancel and the requirement

28 that cancellation be in writing.

88.     Pursuant to Civil Code § 1689.7(g) and because of defendants' failure to comply with Civil Code § 1689.7, plaintiff retains the right to cancel the FRANCO CONSTRUCTION and WEATHERBORNE CONSTRUCTION and both financing and Assessment contracts.

NOTICE OF CANCELLATION:

89.     Plaintiff further advises that the service of the Complaint concurrently serves as notice of cancellation.

90.     Pursuant to Civil Code § 1689.11, defendants are entitled to no compensation.

91.     Pursuant to Civil Code §1689.10, plaintiff hereby demands that defendants tender any note or other evidence of indebtedness.

## FOURTH CLAIM FOR RESCISSION

### (Against All Defendants)

92.     Plaintiff incorporates herein each of the allegations contained in the above paragraphs as though fully set forth herein.

93.     Pursuant to CC 337.3 and action based upon the rescission of a contract in writing the time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred. Where the ground for rescission is fraud or misstate, the time does not begin to run until the discovery the aggrieved party of the facts constituting the fraud or mistake. the time does not begin to run until the representation becomes false.

94.     The federal doctrine of fraudulent concealment operates to toll the statute of limitations where the plaintiff has been injured by fraud remains in ignorance of it without any fault or want of diligence or care on his part.

95.     At all times herein mentioned plaintiff remained ignorant of the facts supporting fraud and continues to remain ignorant of them except to the extent he may understand that he cannot pay his tax bill.

96.     Plaintiff never received a Notice of Right to Cancel. Accordingly, plaintiff has an extended three (3) year right to cancel the loans in accordance with CC 226.23(3).

97.     Plaintiff is entitled to and by this action seeks to rescind both the PACE Renew and Ygrene loans and Assessment contracts on the foregoing stated reasons and on the below legal grounds, each of which provide an independent ground for relief, namely:

- •   TILA Violations
- •   Fraud
- •   Violation of Consumer Legal Remedies Act
- •   Unfair Business Practices
- •   Intentional Misrepresentation
- •   Elder Abuse
- •   Equity
- •   Public policy

98.     TILA, 15 USC §1601, et. seq. extends plaintiff's right to rescind a loan to three years because the borrower received false and incomplete disclosures of the loans terms and plaintiff's right o rescind.  As alleged above, defendants and their agents failed to explain the terms of the loans and the financial consequences of placing a lien of plaintiffs property and the consequence of default.

99.     Additionally, the lack of diligence and collusion by the defendants to place plaintiff in a loan he had no ability to repay and could not afford, would ultimately benefit defendants following default and forced tax sale of his home.

RESCISSION BASED ON PUBLIC POLICY:

100.    Public interest would not be served and would be prejudiced by permitting the alleged contract and security interest to stand, and would only serve to ratify fraudulent and unscrupulous lenders and contractors.

101.    Pursuant to Civil Code § 1689(b)(6), a contract cannot be permitted to stand if the public interest will be prejudiced. As set forth above, the home improvement documents, the CALIFORNIAFIRST financing documents, RENEW and YGRENE financing documents and Assessment contracts are the products of deception, fraud, and elder abuse.

102.    Plaintiff was completely unaware of the existence, contents and terms of

the CaliforniaFIRST and CHFA financing documents, as their terms were materially misrepresented to himr, and he was denied the opportunity to read them. Plaintiff never agreed to sign any financing documents, electronically or otherwise, and in fact never signed any documents electronically did not agree to sign any documents electronically, and never authorized anyone to sign any electronic documents on her behalf, including the YGRENE and RENEW financing documents, the existence of which Plaintiff was unaware and never received. To the extent the County, Renew, and YGRENE used the email addresses to send and receive documents, these documents were not "sent" in compliance with Civil Code § 1633.15(a), and were never received by Plaintiff.

103.    The County, RENEW, and YGRENE failed to verify that the electronic signatures on the financing documents and Assessment contracts were attributable to Plaintiff, in violation of the California Uniform Electronic Transactions Act.

104.    The County, RENEW Defs and YGRENE Defs further failed to ensure that the CaliforniaFIRST and CHFA financing documents were levied with Plaintiff's free and willing consent, in violation of the PACE authorizing legislation.

105.    Permitting such contracts to stand would prejudice the public interest. Accordingly, Plaintiff is entitled to rescission of the home improvement documents, CALIFORNIAFIRST and CHFA financing documents, Assessment contracts and any and all documents flowing from them, pursuant to California Civil Code § 1689, and is entitled to have his property taxes restored to the amount he was charged prior to impressment of the contractual assessments.

106.    Plaintiff intends service of the summons and complaint in this action to serve as notice of rescission on all defendants.

RESCISSION BASED ON ELDER ABUSE:

107.    In taking the actions set forth herein, defendants took, secreted, appropriated, obtained and retained the property of Plaintiff, an elder, to a wrongful use, with the intent to defraud, and in bad faith, knowing that Plaintiff had the right to retain her ownership interest in the Subject Property, and to have her ownership interest returned

to her. The conduct of said defendants, as set forth above, constitutes financial elder abuse as defined by Welfare and Institutions Code § 15610.30. Plaintiff is entitled to an award of attorney's fees pursuant to Welfare and Institutions Code § 15657.5.

108.     Defendants actions have caused plaintiff to be damaged in an amount not yet ascertained, but exceeding $150,000.00.

## FIFTH CLAIM FOR FRAUD

(Against All Defendants)

109.     Plaintiff incorporates herein each of the allegations contained in the above paragraphs as though fully set forth herein.

110.     Defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving plaintiff and inducing him to place his name or initials on documents which cause him to lose his real and personal property without knowing it.

110.     Defendants and each of them agree to loan plaintiff money knowing he was unable to repay the loan and had no income to justify the ability to repay the loan.

111.     Defendants and each of them never asked plaintiff for proof of income nor request a credit application.

112.     Plaintiff believes that he was targeted based on recorded property records indicating equity in his property thereby targeting him to strip him of his equity, knowing full well he could not repay the loan under any circumstances other than through a forced tax sale.

113.     Defendants and each of them engaged in the unlawful suppression of facts, circumstances and terms the specific self-serving purpose of financial gain.

114.     Defendant knew or should have known that plaintiff had no ability to repay the loan.

115.     Defendants knew or should have known that plaintiff lacked the mental ability to understand or read any of the purported contract terms, or more importantly detect the deceptive practices and deceitful representations concerning the cost and repayment of the home improvements.

116.    Plaintiff relied on the defendants' deception, which was the actual and proximate cause of plaintiff's damages.

117.    Plaintiff is entitled to and does hereby seek exemplary damages and punitive damages for defendants fraudulent conduct in a sum to be determined at trial.

**SIXTH CLAIM FOR VIOLATION OF**
**BUSINESS & PROFESSIONS CODE  §17200**
(Against All Defendants)

118.    Plaintiff incorporates herein each of the allegations contained in the above paragraphs as though fully set forth herein.

119.    Business & Professions Code §§ 17200 et seq., also known as California's Unfair Competition Law, prohibits any "unlawful, unfair or fraudulent business act or practice."

120.    RENEW Defs and YGRENE Defs violated, and continue to violate, section 17203's prohibition against engaging in "unlawful" acts or practices by violating Welfare & Institutions Code § 15657.5, as described above, by devising and implementing a loan program that intentionally did not require the borrower to have the ability to repay the loan, by targeting property owners with equity which would later be stripped by lender following default, and by the other fraudulent activity described herein.

121.    Defendants FRANCO and WEATHERBORNE, together with principals and agents for FRANCO CONSTRUCTION and WEATHERBORNE CONSTRUCTION violated B&P §17203's prohibition against unfair or fraudulent business acts or practices by the following acts, among other things:

- Failing to to have policies and procedures in place to prevent the fraud described herein;

- failing to implement and enforce policies and procedures that were in place to prevent the fraudulent activities described herein;

- Failing to screen and supervise its employees and agents, thereby permitting the fraudulent activities described in this complaint to occur;

18

- Failing to ensure that the work of its employees and agents does not result in injury to the property;
- Failing to prevent overcharging for products and labor; and
- Charging for products, services and labor not provided nor performed.

122. RENEW Defs and YGRENE Defs have violated, and continue to violate B&P §17203's prohibition against unfair or fraudulent business acts or practices by the following acts, among other things:

- Failing to screen and monitor its Registered Contractors, permitting the fraudulent activities described in this complaint to occur;
- Failing to either have policies and procedures in place, or failing to implement and enforce policies and procedures that were in place, to verify that an electronic signature is attributable to the property owner;
- Failing to either have policies and procedures in place, or failing to implement and enforce policies and procedures that were in place, to ensure that documents are sent, received, and signed in accordance with the Uniform Electronic Transactions Act;
- Failing to either have policies and procedures in place, or failing to implement and enforce policies and procedures that were in place, to ensure that contractual assessments are only levied with the free and willing consent of the owner of each lot or parcel on which an assessment is levied at the time the assessment is levied; and
- Failing to ensure that the work of its registered contractors is completed in accordance with the terms of the home improvement documents and CaliforniaFIRST and CHFA Financing and Assessment contracts are completed satisfactorily.

123. As a result of RENEW and YGRENE's business acts and practices, Plaintiff has incurred actual financial losses and injuries, including the contractual Assessments and

liens recorded against his home that require payment and may cause foreclosure and a damaged home with incomplete work.

/ / /

/ / /

/ / /

## SEVENTH CLAIM FOR RESCISSION AND DAMAGES FOR INTENTIONAL MISREPRESENTATION

(Against All Defendants)

124.   Plaintiff incorporates herein each of the allegations contained in the above paragraphs as though fully set forth herein.

125.   Plaintiff is informed and believes and thereupon alleges that the actions of defendants and each of them, pursuant to the authority granted to YGRENE Defs and RENEW Defs by the County under the Administration Contract, by and through YGRENE and RENEW's agents and employees, FRANCO and WEATHERBORNE and other agents and employees of FRANCO and WEATHERBORNE , as described above, were part of a fraudulent scheme designed to take advantage of Plaintiff, a vulnerable elderly homeowner subsisting on a limited, fixed income, designed to obtain and strip his home equity fro themselves, by means of foreclosure.

126.   As set forth above, sometime in late June 2013, Plaintiff who was then 83 years old, was solicited at her home by either the principals or salespersons acting on behalf of FRANCO CONSTRUCTION and WEATHERBORNE CONSTRUCTION, each acting as their agents and authorized representatives.

127.   Plaintiff did not know and did not understand the costs of any of the recommended improvements.

128.   Plaintiff did not know and did not understand the costs the costs for the recommended improvements would be added to his property taxes.

129.   Plaintiff did not know and did not understand the true cost of the improvements, that he was was taking a loan secured by his property and that interest would be added to the cost amount.  Plaintiff did not understand these terms because he was incapable of understanding them.

130.   Likewise, Plaintiff was not provided any documentation that was legible as plaintiff 1suffered and continues to suffer from impaired vision.

/ / /

131.   Plaintiff was directed by unknown persons acting on as principals or agents of FRANCO CONSTRUCTION and WEATHERBORNE CONSTRUCTION to sign documents, the contents of which are wholly unknown to plaintiff and were never read or explained to him.

132.   Defendants and each of them knew the statements made to coerce trick or otherwise persuade Plaintiff to sign or initial documents were false. Misrepresentations were made with the intent to induce Plaintiff to execute the home improvement documents, the RENEW and CHFA completion certificates, and the Assessment contracts. At the time these misrepresentations were made to Plaintiff, he was ignorant of the falsity of them and didn't know he had to pay for the improvements.

133.   Plaintiff would not have executed the documents, completion certificates and assessment contracts if he knew what he was signing.

134.   Plaintiff's relied on the purported professional contractors and their agents who claimed to work for a government program.

135.   As a direct and proximate result of the actions of defendant contractors and their authorized agents and whose misrepresentations and actions were authorized and ratified by Renew, and Ygrene, Plaintiff was damaged in that he is contractually obligated to over $150,000.00 in home improvements and related financing and his home is now subject to unaffordable property taxes of $19,755. annually, which he has defaulted and now faces the risk of foreclosure.

136.   Accordingly, Plaintiff is entitled to rescission of both the FRANCO CONSTRUCTION and WEATHERBORNE CONSTRUCTION contracts, PACE financing documents, and any and all related documents which have recorded against his property.

137.   Pursuant to California Civil Code § 1689, plaintiff is entitled to have his property taxes restored to the' amount he would be charged prior to the fraudulent assessments arising out of the fraudulent contracts.

138.   The conduct of defendants Ygrene, Renew,  FRANCO, and WEATHERBORNE, as set forth above, was reckless, malicious, oppressive and fraudulent, and constitutes an

intentional scheme to defraud and oppress Plaintiff with the intention of causing injury to him by depriving him of his home's equity and his legal rights, and was carried on by defendants with a malicious, willful and conscious disregard of the rights of Plaintiff.

139.    The actions of defendants constitute despicable and malicious conduct that subjected Plaintiff to cruel and unjust hardship and oppression in conscious disregard of Plaintiff's rights. Plaintiff is entitled to punitive damages against defendant in an amount to be proven at trial.

140.    Pursuant to the provisions of Civil Code § 3345, YGRENE, RENEW,  FRANCO, and WEATHERBORNE, are liable for treble damages and penalties because: (a) individually or collectively they knew or should have known that their conduct was directed as to an elder person; (b) their conduct caused Plaintiff, an elder person, to suffer, or risk suffering, substantial loss of property essential to their health and welfare; (c) Plaintiff is a senior citizen more vulnerable than other members of the public to the conduct of defendants because of his age, impaired understanding, impaired health, and restricted mobility; and (d) Plaintiff actually suffered substantial physical. emotional, and economic harm resulting from the conduct of defendants.

141.    As to the defendant County, Plaintiff does not seek monetary damages, but does seek cancellation of all PACE financing documents and real property recordings.

142.    In taking the actions set forth herein, defendants took. secreted, appropriated, obtained and retained the property of Plaintiff, an elder, to a wrongful use, with the intent to defraud, and in bad faith, knowing that Plaintiff had the right to retain her ownership interest in plaintiff's real proeprty, and to have his ownership interest returned to him.

## EIGHTH CLAIM FOR FINANCIAL ELDER ABUSE

### (Against All Defendants)

143.    Plaintiff incorporates herein each of the allegations contained in the above paragraphs as though fully set forth herein.

144.    At all times herein mentioned, plaintiff Mr. McSweeney was an "elder" as

1    defined by California Welf. & Inst. Code § 15610.27.

2    145.   At all times material, defendants knew or should have known of plaintiff's

3    advanced age.

4    146.   As set forth above, plaintiff was fraudulently induced by defendants and

5    their employees and/or agents, into placing his initials and/or signature on documents or

6    electronic devices, including but not limited to:

7    •    home improvement quotes, purportedly contractually obligating plaintiff to

8        approximately $ 77,980.00 to FRANCO CONSTRUCTION;

9    •    home improvement quotes, purportedly contractually obligating plaintiff to

10        approximately $ 80,150.00 to WEATHERBORNE CONSTRUCTION;

11   •    PACE financing documents promulgated by the County Def under the

12        *California Fair* program and security lien created thereby for the FRANCO

13        CONSTRUCTION job;

14   •    PACE financing documents promulgated by Renew Defs under the *Ygrene*

15        program and security lien created thereby for the WEATHERBORNE

16        CONSTRUCTION job;

17   •    CaliforniaFIRST Assessment Contract;

18   •    YGRENE Assessment Contract;

19   •    Any other construction quotes or financing documents related to the above

20        documents or their recording on plaintiff's real property.

21   147.   Defendants FRANCO and WEATHERBORNE have been paid in full

22   through the PACE financial programs.

23   148.   Defendants County, Renew and Ygrene profit and continue to profit off the

24   transaction through loan, administrative, recording and other fees and interest payments.

25   149.   The County, Renew, and Ygrene failed to verify that the electronic

26   signatures on the PACE Assessment Contracts and related PACE Financing Documents

27   were properly attributable to plaintiff, in violation of the California Uniform Electronic

28   Transactions Act.

150.   Renew, and Ygrene further failed to ensure that the CALIFORNIAFIRST and YGRENE Assessment contracts were levied with plaintiff's free and will and consent, in violation of the PACE authorizing legislation.

151.   Plaintiff's residence remains encumbered by the CALIFORNIAFIRST and YGRENE liens and assessment contracts which he never agreed to and cannot afford.

152.   The unconscionable oans and recordings put plaintiff's property at risks for foreclosure.

153.   In taking advantage of plaintiff, defendants actions as set forth above, took, secreted, appropriated, obtained and/or retained the personal and real property of plaintiff, an elder, for a wrongful use, and/or assisted in taking, secreting, appropriating, obtaining and/or retaining the personal and real property of plaintiff, an elder, for a wrongful use.

154.   Defendants and each of them knew or should have known that their conduct would result in harm to plaintiff. Even after being informed of the full extent of the fraudulent activities involved in these transactions.

155.   Even after receiving demand letters, defendants continued to fail to take any action to correct or even address the wrongful conduct taken against plaintiff.

156.   As a direct, proximate and foreseeable result of the conduct of defendants, as set forth above, plaintiff has suffered and continues to suffer, humiliation, mental anguish, fear, and emotional distress, and is entitled to general damages in an amount to be proven at trial.

157.   The conduct of defendants and each of them as set forth above, was reckless, malicious, oppressive and fraudulent, and constitutes an intentional scheme to defraud and oppress plaintiff with the intention of causing injury to plaintiff by depriving him of his residence, his home's equity and his legal rights, and was carried on by defendants with a malicious, willful and conscious disregard of the rights of plaintiff.

158.   The actions of defendants and each of them constitute despicable and malicious conduct that subjected plaintiff to cruel and unjust hardship and oppression in conscious disregard of his rights.

159.   Plaintiff is entitled to and hereby seeks punitive damages against defendants in an amount to be proven at trial.

160.   Pursuant to Civil Code § 3345, Defendants and each of them are liable for treble damages and penalties because: (a) individually or collectively they knew or should have known that their conduct and the conduct of their authorized agents and employees was directed as to an elder person; (b) their conduct caused plaintiff, an elder person, to suffer, or risk suffering, substantial loss of property essential to their health and welfare; (c) plaintiff is a senior citizen more vulnerable than other members of the public to the conduct of defendants because of his age and age related mental infirmities, which impaired his understanding, impaired health, and (d) plaintiff actually suffered substantial physical, emotional, and economic harm resulting from the conduct of defendants.

161.   The conduct of defendant, as set forth above, constitutes "financial abuse" of an elder" as defined by Welf. & Inst. Code §15610.30.

162.   Plaintiff is entitled to an award of attorney's fees under Welf. & Inst. Code § 15657.5.

### TENTH CAUSE OF ACTION FOR CANCELLATION OF TAXES

(Against All Defendants and County)

163.   Plaintiff incorporates herein each of the allegations contained in the above paragraphs as though fully set forth herein.

164.   Subdivision (a) of the Revenue & Tax Code provides that -[a]ll or any portion of any tax, penalty, or costs, heretofore or hereafter levied, shall, on satisfactory proof, be cancelled by the auditor if it was levied or charged . . . illegally."

165.   R&T Code §4986.2 provides that uncollected taxes, penalties, and costs also may be cancelled in this manner.

166.   As more fully described above, the California FIRST Financing Documents and the RF and RF-1 Financing Documents are the products of forgery, fraud, and elder abuse.

/ / /

167.    Further, these documents violate the California Uniform Electronic Transactions Act and the requirement of the PACE authorizing legislation meant to ensure that the assessments only be levied with the property owner's free and willing consent.

168.    Therefore the tax assessment against plaintiff's home to repay the YGRENE and CaliforniaFIRST loans, must be cancelled together with any associated penalties or costs.

## PRAYER

1.    Award actual damages to be established at trial.

2.    Award statutory damages and attorney fees

3.    Exemplary and punitive damages.

4.    Award plaintiff costs and reasonable attorneys fees in accordance with 15 U.S.C.§ 1640.

5.    Any other relief as the court may deem just.


DATED:  June 24, 2019                           RICHLAND & ASSOCIATES


_____/s/_____

FELIPA R. RICHLAND, Attorney for Plaintiff